**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Farm Bureau Insurance Agency and Christopher M. Browning, Appellants (Defendants Below),**

v.

**Melvin D. COOK, Appellee (Plaintiff Below).**

**No. 1-183A31.**

Court of Appeals of Indiana, First District.

May 23, 1984.

James W. Treacy, David R. Abel, Treacy, Cohen & Grossman, Indianapolis, for appellants.

Louis N. Garlove, Morris, Garlove, Waterman & Johnson, Louisville, Ky., Michael F. Ward, Rudy, Ward & Crumbo, New Albany, for appellee.

ROBERTSON, Judge.

United Farm Bureau Mutual Insurance Company, Farm Bureau Insurance Agency, and Christopher M. Browning (Defendants)

appeal an adverse judgment rendered against them on Melvin D. Cook's complaint which sought damages for their alleged breach of a contract to provide insurance and their negligent breach of a duty to advise their client concerning his insurance needs.

Cook is a surgeon who owns a horse farm and he purchased horse barns in Kentucky which he dismantled and transported to Indiana for use on his farm. Cook leased a crane from the seller of these barns. Whayne Supply Company, Inc. of Louisville, and during the dismantling, this crane overturned while it was being operated by Cook's employee. Whayne Supply Company sued Cook in Kentucky and he was held personally liable for damages to the crane. Cook in turn sought to recover against the Defendants in this case for the damages he was assessed and costs. He had attempted to file a claim with Farm Bureau, but it denied coverage and it did not assist in defending the Kentucky action.

The Defendants raise two issues for our review:

1) Did the trial court err by giving Final Instruction No. 4 defining the defendants' duty because it was a mandatory instruction and because it did not address contributory negligence?

2) Did the trial court err by refusing to admit into evidence the findings of fact and conclusions of law made by the Kentucky court in the underlying case? [1]

Cook is a surgeon in New Albany, Indiana, who had managed a horse farm as a sideline for approximately twelve years prior to trial. Cook became acquainted with Browning, an insurance agent, when he purchased the farm. Subsequently, Browning provided all the insurance coverage related to Cook's farm. Cook is not knowledgeable about insurance and he would consult Browning about potential risks related to his farm and the necessary

---

1. A third issue relating to the sufficiency of the evidence was specifically waived by Farm Bureau during oral argument.

insurance to cover these risks. Cook would ask Browning for all coverage pertinent to his farm and leave the details to Browning's discretion. Browning would subsequently bill Cook for the coverage selected. Browning was aware that Cook relied on his advice to cover risks related to the farm and both men considered Browning to be Cook's "insurance agent" for the farming operation.

In 1978, Cook became aware of the opportunity to purchase two large horse barns located in Kentucky. These barns were standing structures which would have to be dismantled and moved. Prior to undertaking this project, Cook discussed it with his employee who worked on the farm, with his wife and with Browning. After deciding to purchase the barns, Cook signed two sales contracts, the first on November 21, 1978, and the second on February 14, 1979. Both contracts contained language that Cook would assume liability for the dismantling project. The first contract read that Cook would "assume any and all responsibilities for any accident whatsoever which may occur during dismantling of said barn ... and subsequent shipment of said barn ... to [his] property". The second contract read, "any and all responsibility and liability for any accident, injury, or damage whatsoever which may occur during [his] dismantling of the barn and removal of the barn from [Whayne Supply's] property".

In early February, 1979, Cook went to Browning's office to discuss his insurance coverage. Cook was concerned about risks related to moving the barns and the adequacy of his coverage. He wanted all his potential risks covered. Customarily, Cook and Browning dealt with each other by telephone, but because he had never undertaken a similar project, Cook decided to visit Browning at his office to discuss the project. Cook explained to Browning that the barns would have to be dismantled and moved to Indiana with the use of contract labor and rental equipment including a crane. Cook wanted liability coverage for property damage, personal injury and the materials in the barns. He placed an order

for coverage, apparently an oral request. Browning told Cook he could not write coverage for the component parts of the barns while they were in Kentucky. According to Cook, this was the only denial of coverage which he received, however, Browning did not state what the extent Cook's coverage would be. He also did not deny he could provide the remaining coverage and he did not refer Cook to another agency.

Subsequently, but prior to the accident, Cook received an insurance policy from Farm Bureau titled a "Rural Guardian Policy". This policy provided coverage for a period from February 14, 1979 to September 22, 1979. The policy did not include coverage for the crane or the dismantling. Cook had been covered by a Rural Guardian Policy since 1974. He assumed that if he needed additional policies or changes in his current policy, they would be forthcoming from Browning's office in response to his order for coverage on the dismantling project.

On March 5, 1979, Cook entered into a lease agreement with Whayne Supply to lease a crane. This lease contained the following paragraph pertaining to the lessee's obligation to carry insurance.

(5) Insurance: lessee shall, at Lessee's cost, obtain and maintain in effect Named Peril Marine Insurance in an amount satisfactory to Lessor in which Lessee is named as an insured as its interests may appear, and shall furnish proof of such coverage satisfactory to Lessor. If Lessee fails to obtain such insurance, Lessee shall be considered by Lessor as a self-insurer or Lessor, at its option, may proceed under Paragraph (11) hereof by declaring Lessee in default. If Lessee requests Lessor to do so in writing, Lessor may obtain insurance on the leased property and the premiums paid shall be collectable from Lessee as additional rent. Whether insurance is carried or not Lessee is fully responsible for the leased property as set forth in Paragraph (7) hereof. Named Peril Ma-

rine Insurance shall include the perils of fire, tornado, cyclone, windstorm, landslide, upset or overturn (including overturn or derailment of conveying vehicle), flood, strikes, riot, civil commotion, sabotage, vandalism, malicious mischief, burglary, theft, explosion, collision and collapse of bridges or culverts. All insurance policies acquired by Lessee pursuant to this paragraph, or acquired by Lessor pursuant to this paragraph and paragraph 11 hereof, shall contain clauses whereby the insurer waives the benefit of all rights of subrogation which it might otherwise possess. If Lessee has failed to obtain insurance coverage or to obtain adequate insurance coverage (including inadequacy by reason of deductible clauses), in breach of its obligations under this paragraph, Lessee will be deemed to have waived any right to assert any claim or offset against Lessor as a result of claim or offset against Lessor as a result of damage to or loss of use of the property which would have been a covered loss under a standard Named Peril Marine insurance policy providing full coverage.

On March 8, 1979, Whayne Supply's crane overturned while it was being operated by Cook's employee. Cook was notified of the accident while he was at the hospital. He called Browning's office to report the accident. He filed a claim, but Farm Bureau denied coverage. Thereafter, Whayne Supply initiated the underlying Kentucky action against Cook. Farm Bureau refused to defend the suit. Cook was found liable for damages to the crane plus interest and costs, a total of $20,055.62. He initiated this action to recover this amount plus his costs. The jury awarded him $26,023.17.

After the accident, Cook discovered Browning is a "captive agent" for Farm Bureau. This means that Browning is bound by his agency contract with Farm Bureau to offer only Farm Bureau's policies. Browning does not disclose this relationship to his customers, in part because of the potentially harmful impact on his business.

The Defendants argue the trial court erred by giving its final instruction numbered 4; it pertained to Browning's duty as an insurance agent to his client. They contend the instruction was mandatory because it instructed the jury that Browning owed Cook a duty when in fact, the question of whether a duty existed was being litigated. The Defendants also assert the question of whether Browning owed Cook a duty was a factual question to be resolved by the jury and not the court. They claim the instruction was defective because it did not contain language referring to proximate cause and Cook's potential contributory negligence; really an argument that the instruction had to contain all the elements necessary for the plaintiff to recover because it was a mandatory instruction.

■ We first note the Defendants objected to this instruction at trial only on the basis that it "appears to be a mandatory instruction on the legal element of duty. In this case, Chris Browning had a duty to the plaintiff only to the extent there was a contract between the parties either express or implied". Therefore, we will not address the other issues concerning proximate cause and contributory negligence. Although it is true a mandatory instruction must contain all the elements or facts essential to justify a compulsive verdict, *Gerrish v. Brewer*, (1979) Ind.App., 398 N.E.2d 1298, it is also true that a party must make a specific objection at trial to a potentially erroneous instruction in order to preserve the issue for appeal. *Id.*, Ind. Rules of Procedure, Trial Rule 51(C). At best, the Defendants' objection can only be interpreted as addressing the question of Browning's duty.

■ A mandatory instruction is one in which there is an attempt to set out a factual situation upon which the jury must reach a certain result. *Gerrish, supra.* However, instructions which state propositions of law without incorporating a factual situation are not mandatory. *Wiles v. Mahan*, (1980) Ind.App., 405 N.E.2d 591.

The challenged instruction in the case at bar read:

It was the duty of Christopher A. Browning, as agent and employee of the defendants, United Farm Bureau Mutual Insurance Company, and Farm Bureau Insurance Agency, to possess and exercise that degree of reasonable or ordinary care and skill in the handling of his client's insurance affairs that is ordinarily possessed and exercised by an insurance agent engaged in the same line of business in the same or a similar locality, under circumstances like or similar to those proven in this case. A failure to meet this standard of care and skill constitutes negligence.

If you find, from a preponderance of the evidence, that the defendants, United Farm Bureau Mutual Insurance Company, Farm Bureau Insurance Agency and Christopher A. Browning, failed to observe the duty imposed upon them in this Instruction, your verdict should be for the plaintiff, Melvin D. Cook, against the defendants, United Farm Bureau Mutual Insurance Company, Farm Bureau Insurance Agency and Christopher A. Browning, jointly and severally. Unless you so find, your verdict should be for the defendants.

■ There is no question that Browning as an insurance agent owed his clients a duty to exercise reasonable care in servicing their insurance needs.[2] *Stockberger v. Meridian Mutual Insurance*, (1979) Ind. App., 395 N.E.2d 1272; *Bulla v. Donahue*, (1977) 174 Ind.App. 123, 366 N.E.2d 233. The challenged instruction, although perhaps poorly worded, simply states this general legal proposition without attempting to include all the facts necessary for a judgment in the plaintiff's favor and therefore, it is not a mandatory instruction. *Wiles v. Mahan, supra.* Thus, we can examine all the instructions and read them as a whole to determine if there has been an instructional error. *Id.* The remaining instruc-

tions explained that this duty would be applicable if Browning had undertaken to procure insurance for Cook. They also explained the elements of a contract to procure insurance and proximate cause. We find no error.

■ Even if we accept the Defendants' argument that the instruction specifically stated that Browning owed Cook a duty, we still find no error. The question of whether a particular defendant owes the plaintiff a duty is a question of law. *State, Dept. of Natural Resources v. Morgan*, (1982) Ind.App., 432 N.E.2d 59; *Orth v. Smedley*, (1978) 177 Ind.App. 90, 378 N.E.2d 20; *Clyde E. Williams & Assoc., Inc. v. Boatman*, (1978) 176 Ind.App. 430, 375 N.E.2d 1138. Therefore, it was not an encroachment on the jury's function for the trial court to resolve the issue.

In both *Stockberger, supra* and *Bulla, supra*, an insurance agent's duty is described in the following language:

An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. 16 Appleman, *Insurance Law* Sec. 25:1 (2d ed. 1964); 44 C.J.S. *Insurance* Sec. 172 (1945); Annot., 64 A.L.R.3d 398 (1975). If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of a duty imposed by contract. 16 Appleman, *Insurance Law and Practice* Sec. 8841 (1968); 3 G. Couch, *Cyclopedia of Insurance Law* Sec. 25:46 (2d ed 1964).

The question of agency for the insured must be determined from all the facts and circumstances of the case, together with the conduct of the parties and the communications between them. 44 C.J.S. *Insurance* Sec. 281 (1945).

---

**2.** Although an insurance agent owes his clients a duty to exercise reasonable care, we do not mean to imply that the instruction in its entirety

is a correct statement of the law. However, the instruction was not challenged on this basis.

*Stockberger,* 395 N.E.2d at 1279; *Bulla,* 366 N.E.2d at 236.

■ We find that the Defendants' argument views the relationship between Browning and Cook from too narrow a perspective. Granted an insurance agent's duty does not arise in regard to any particular client until he undertakes to procure insurance; however, in this case, the relationship has existed for over ten years. Browning himself conceded that he was Cook's insurance man and that Cook relied on his advice in purchasing insurance. Additionally, by Browning's own admission, his role went beyond that of a mere agent and he counseled Cook on the appropriate coverages for his horse farm. This case stands in marked contrast to *Bulla* for example, where the plaintiff had never done business with the insurance agent prior to the disputed transaction. In the case at bar, a long-established relationship of entrustment had developed between the insured and agent, and Browning exercised broad discretion to service Cook's insurance needs. Therefore, the trial court did not err even if it did decide Browning owed Cook a duty. *Hardt v. Brink,* (W.D.Wash. 1961) 192 F.Supp. 879. The focal point of the litigation was not whether Browning owed a duty, but instead whether he breached it in regard to insurance for the barn project. The jury was allowed to make this determination and to resolve factual issues related to the transaction; whether Cook had placed an order; whose version of the events was credible; and whether Browning undertook to provide coverage.

The Defendants also assert the trial court erred by excluding from the evidence findings of fact and conclusions of law rendered in the Kentucky judgment against Cook. They argue this evidence was relevant to show Cook's liability to Whayne Supply was predicated on the lease and not the sales contracts. In turn, the defendants claim the basis for the Kentucky judgment is relevant to the question of whether Browning's breach of his duty caused Cook's injuries. The Defendants point out that the equipment lease was not signed until after Cook placed his order with Browning and that the lease required a specific type of insurance. The Defendants argue that even if Browning had obtained insurance, he would not have known of the lease's requirements and he would not have known to obtain the required insurance. Therefore, the Defendants conclude Browning's failure to obtain insurance was not the cause of Cook's damages in the Kentucky action and that Cook's failure to show Browning the lease was the cause.

■ Evidence is relevant if it tends to prove a material fact. *State v. Hall,* (1982) Ind., 432 N.E.2d 679. Evidence is relevant if it makes an inference more probable than it would be absent the inference. *Smith v. Crouse-Hinds Co.,* (1978) 175 Ind.App. 679, 373 N.E.2d 923. The trial court has wide latitude in ruling on the admissibility of evidence. *Babson Bros. Co. v. Tipstar Corp.,* (1983) Ind.App., 446 N.E.2d 11. The trial court's decision will only be reversed for an abuse of discretion. *Smith v. Crouse-Hinds Co., supra.*

■ The trial court did not abuse its discretion. The Defendants presented their version of the facts including Browning's statements that he never saw the contracts or lease. Even if the Defendants had been allowed to prove the lease was the basis for Cook's liability in the Kentucky action, they still would not have broken the causal connection between Browning's breach of his duty and Cook's injuries nor would they have necessarily shown that Cook was responsible.

■ As part of his duty to exercise reasonable care, Browning had a duty to inform Cook that he could not provide any of the requested insurance coverage.

[T]here is implied in an undertaking to procure insurance a corresponding duty to seasonably notify the applicant in the event the agent is unable to obtain insurance. 3 Couch on Insurance 2d, Sec. 25:47, at 353 (1960); 43 Am.Jur.2d, *In-*

*surance,* Sec. 175, at 232; Annot. 64 A.L.R.3d 398, Sec. 4, at 413 (1975): *Bulla,* 366 N.E.2d at 236.

 Browning did not do so. He also had enough information at his disposal to determine he could not provide coverage. Additionally, Browning had an obligation, in light of his longstanding relation with Cook, to make inquiries about the project after Cook explained it to him, *Hardt v. Brink, supra,* and to obtain the additional information necessary for coverage. *Hamacher v. Tumy,* (1960) 222 Or. 341, 352 P.2d 493. The fact that Cook's liability in Kentucky was based on the lease would not have altered Browning's breach of these duties.

The trial court's judgment is affirmed.

NEAL, P.J., and RATLIFF, J., concur.