**Kelly C. PARKER, by her parents, Michael A. PARKER and Jacqueline S. Parker, and Michael A. Parker and Jacqueline S. Parker, Appellants–Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and John R. Mills, Appellees–Defendants.**

No. 49A02–9210–CV–474.

Court of Appeals of Indiana, Second District.

March 15, 1994.

Transfer Denied July 19, 1994.

William T. Rosenbaum, Stephen J. Hyatt, Hyatt & Rosenbaum, P.A., Indianapolis, for appellants.

John D. Cochran, Jr., Hackman, McClarnon, Hulett & Craycraft, Indianapolis, for appellees.

SULLIVAN, Judge.

The Parkers appeal the trial court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm) and its agent, John R. Mills.

The Parkers assert that a long standing special relationship existed between themselves and State Farm's agent, John R. Mills (Mills), and that accordingly State Farm had a duty to advise the Parkers of the availability and desirability of underinsured motorist coverage.

We affirm.

The Parkers first became insured by State Farm in 1970. Mills later interviewed the Parkers about their automobile insurance needs in 1975. At that time, Mills issued a binder for the Parkers' 1973 Chevrolet Chevelle. The policy provided liability limits of $100,000 per individual and $300,000 per accident as well as uninsured motorist coverage. In addition to the Chevelle, the Parkers secured automobile insurance from Mills for other vehicles as they replaced and added automobiles for family use. The Parkers arranged automobile coverage over the telephone. The only face-to-face meeting with Mills took place at the Parkers' home to discuss home owners insurance.

On May 1, 1988, Kelly Parker was injured while riding in the Parkers' Chevelle. The insurance carrier of the driver responsible for the accident paid its policy maximum to the Parkers, but the payment was insufficient to cover Kelly's medical expenses. The policy in effect for the Parkers' Chevelle on

May 1 did not include underinsured motorist coverage.

In accordance with a change in insurance laws,[1] State Farm offered to add underinsured motorist coverage, in an amount equal to policy liability limits, to the Parkers' *renewal* policies. State Farm sent notification of this change with the Parkers' renewal invoice for the Chevelle in April of 1988. After reading the notice, the Parkers elected to pay the premiums for the added coverage to commence May 18, 1988. Prior to this notification, the Parkers neither discussed underinsured motorist coverage with Mills nor had independent knowledge of the existence of this protection. Based upon the policy in effect when Kelly's injuries occurred, State Farm denied Parkers' claim.

The trial court concluded, *inter alia*, that State Farm did not owe a duty to advise the Parkers of underinsured motorist coverage prior to May 1, 1988, because a special relationship of entrustment had not evolved between the insured and the insurer. The trial court granted State Farm's motion for summary judgment. Upon appeal, the Parkers argue that whether a special relationship with Mills existed created a question of fact inappropriately resolved by summary judgment.

■ Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *Pepkowski v. Life of Indiana Insurance Co.* (1989) Ind., 535 N.E.2d 1164, 1168. A trial court must rely upon the pleadings *and* the depositions, answers to interrogatories, admissions on file, affidavits, and testimony submitted and designated to the court in reaching its decision. Ind. Trial Rule 56. Appellate review is similarly limited and we may not reverse a grant of summary judgment "on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H).

■ The Parkers agree that "an insurance agent or broker who undertakes to procure insurance for another … owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance." *Craven v. State Farm Mutual Automobile Insurance Co.* (1992) 1st Dist. Ind. App., 588 N.E.2d 1294, 1296. The Parkers argue they should not be bound by the parameters of this general rule. Rather, the Parkers contend that "something more than the standard insured-insurer relationship" existed, thereby obligating Mills to advise them concerning State Farm's underinsurance option. *Id.* at 1297.

■ The question becomes what components establish an agent "plus" relationship. At a minimum, the insured and insurer must be engaged in a long-term relationship for the purpose of securing insurance coverage. In *United Farm Bureau Mutual Insurance Co. v. Cook* (1984) 1st Dist. Ind.App., 463 N.E.2d 522, 528, a duty to advise was imposed upon an agent who counseled the insured during a ten-year period. *Cf. Craven, supra* at 1297 (no duty to advise where initial contact between agent and insured derived from the transaction involved in the litigation).

■ In order to align themselves with the *Cook* principle, the Parkers seize upon the fact that they have obtained car insurance through Mills since 1975. Upon closer examination, however, *Cook* clearly instructs that it is the *nature* of the relationship, and not merely the number of years associated therewith, that triggers the duty to advise.[2]

---

1. I.C. 27–7–5–2 (Burns Code Ed.1992). This amendment, requiring that an insurer provide uninsured and underinsured motorist coverage, did not affect policies first issued, i.e., new policies, prior to January 1, 1988. In *Inman v. Farm Bureau Ins.* (1992) 1st Dist. Ind.App., 584 N.E.2d 567, *trans. denied,* the court reaffirmed an earlier decision holding that the amendment applies to "new" policies, not to renewal policies. Consequently, the Parkers' "old" policy did not include underinsured motorist coverage and none was required.

2. In *Cook,* an insurance agent counseled Cook concerning potential risks involving Cook's horse farm and the necessary insurance to cover those risks. Cook sought insurance advice for a special project, dismantling and moving horse barns from Kentucky to Indiana. Due to the unusual nature of this project, Cook visited the agent's

*Cook, supra* at 528 (requiring a "long-established relationship of *entrustment*") (emphasis supplied). Some of the factors relevant to developing entrustment between the insured and the insurer include: exercising broad discretion to service the insured's needs; counseling the insured concerning specialized insurance coverage; holding oneself out as a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and receiving compensation, above the customary premium paid, for expert advice provided. *See, e.g., Craven, supra*, 588 N.E.2d at 1297; *Cook, supra*, 463 N.E.2d at 528; *Nelson v. Davidson* (1990) Wis., 456 N.W.2d 343, 347 (cited with approval in *Craven, supra*).

The Parkers have failed to assert any of the enumerated factors in support of their contention that Mills should have advised them of underinsurance. The Parkers do not claim that Mills provided specialized coverage or that Mills promised to undertake periodic review or specialized analysis of the Parkers' automobile insurance needs. Nothing suggests that Mills considered himself, or received additional compensation as, the Parker's insurance adviser; nor did the Parkers contact Mills for information or advice after receiving notification from State Farm concerning the current availability of underinsurance.[3]

We concur with the *Nelson* court's reluctance "to impose upon the agent an ongoing duty under these circumstances to advise an insured regarding coverage for an indefinite period of time." *Nelson, supra* at 347 (absent special circumstances, no affirmative duty under Wisconsin law to inform insured of availability of underinsured motorist coverage). Here, and particularly after reviewing the underinsurance notice, the Parkers were in the best position to assess their need for underinsurance in light of their personal assets and ability to pay. *Nelson, supra* at 346. Shifting this responsibility from the insured to the insurer is a result neither contemplated by the legislature nor anticipated by the insurance industry.[4] Mills delivered services commensurate with the insurance product the Parkers purchased. Although it may have been good business practice for Mills to suggest that the Parkers add underinsurance to their automobile policies in advance of the renewal, we will not impose such a duty upon him. *Craven, supra*. The Parkers have failed to identify a genuine issue of material fact which would require a reversal of the summary judgment in State Farm's favor.

The judgment of the trial court is affirmed.

SHARPNACK, C.J., and ROBERTSON, J., concur.

office instead of arranging the coverage over the telephone as was his custom. After explaining the pertinent details, Cook obtained a policy issued for an eight-month period and for specific liability covering property damage, personal injury, and materials in the barns. *Cook, supra* at 525. The agent could not arrange coverage for a crane to be used in the dismantling, but failed to advise Cook of this fact. Due to the nature and length of Cook's relationship with his agent, the court concluded that the agent not only breached the duty to procure the requested coverage, but also breached the duty to advise. *Id.*

3. Despite their knowledge of underinsurance, the Parkers admitted that they may have been ignorant concerning the importance of this coverage. Although hindsight is often the best teacher, un-fortunately it is a taskmaster to which insurance is not bound.

4. The net effect of placing the burden upon the insurer would be to "transform insurance companies from a competitive industry 'into personal financial counselors or guardians of the insured, a result we believe goes well beyond anything required by law or dictated by common sense.'" *Nelson, supra* at 346 (quoting *Dubreuil v. Allstate Ins. Co.* (1986) R.I., 511 A.2d 300, 302). We readily agree that imposing a duty to advise in all cases "would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available." *Id.* (citing *Dubreuil*).