# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GEORGE M. PLEWS**
**TODD G. RELUE**
Plews Shadley Racher & Braun, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**DAVID C. JENSEN**
**JOHN P. TWOHY**
Eichhorn & Eichhorn, LLP
Hammond, Indiana

**BRETT T. CLAYTON**
Eichhorn & Eichhorn, LLP
Indianapolis, Indiana

**PHILIP E. KALAMAROS**
Hunt Suedhoff Kalamaros, LLP
St. Joseph, Michigan

FILED
Dec 17 2013, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INDIANA RESTORATIVE DENTISTRY, P.C., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1212-PL-627 |
| | ) | |
| THE LAVEN INSURANCE AGENCY, INC., and | ) | |
| PROASSURANCE INDEMNITY COMPANY, | ) | |
| INC. f/k/a THE MEDICAL ASSURANCE | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick L. McCarty, Judge
Cause No. 49D03-1010-PL-46336

**December 17, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Indiana Restorative Dentistry, P.C. (IRD), appeals the trial court's denial of its motion to correct error following the trial court's summary judgment in favor of Appellee-Defendant, ProAssurance Indemnity Co, Inc. f/k/a The Medical Assurance Co., Inc. (ProAssurance).

We reverse and remand.

## ISSUES

IRD raises three issues on appeal, which we restate as:

(1) Whether Appellee-Defendant, Laven Insurance Agency, Inc. (Laven), was under a special duty to advise IRD about its insurance coverage where Laven and IRD had a long-term relationship;

(2) Whether Laven had a duty to procure full coverage insurance based on its past dealings with IRD; and

(3) Whether ProAssurance is vicariously liable for Laven's actions.

## FACTS AND PROCEDURAL HISTORY

On October 25, 2009, a fire destroyed the Carmel offices of IRD. The office contents were covered under an insurance policy issued by ProAssurance and obtained through Laven. ProAssurance paid the policy limits for the loss. However, IRD now asserts that it was underinsured due to Laven's failure to provide insurance advice and to secure additional insurance coverage.

Dr. Stephen Lehman (Dr. Lehman), a licensed prosthodontist, opened his Carmel office in 1978. Dr. Lehman's spouse, Maureen Lehman (Maureen), is the office manager and has handled the practice's insurance requirements for over twenty years. Dr. Lehman was referred to Laven to secure Indiana Dental Association (IDA) endorsed insurance coverage for his small business.[1] He purchased the coverage recommended by Laven, which sold ProAssurance's products. The relationship between Laven and ProAssurance is governed by an Agency Agreement.

On an annual basis, and as part of the insurance renewal process, Laven would mail IRD a questionnaire with an existing Declarations Page, outlining the current year's policy limits. The questionnaire sought to determine any changes in IRD's practice which might affect its insurance. Maureen would complete the questionnaire and once completed and reviewed, she would mail or fax the questionnaire to Laven. Additionally, in 1999, 2008, and 2009, Maureen annotated the questionnaire with the request to increase the insurance coverage with a specific amount. Laven would process the renewal and send IRD an updated coverage summary for the forthcoming year's insurance policy, with a cover letter stressing the importance of reviewing the coverage summary to confirm that the proposed coverage met IRD's expectations. The coverage summary would list the various coverage limits to be expressed in the renewed insurance policy and the premiums due. Maureen would use the updated coverage summary as a

---

[1] Hepler-Smith Professional Insurance Plans, Inc. acquired Dr. Lehman's account from Hepler-Smith Insurance in 1986 and merged into Laven in 1997. The business relationship with Dr. Lehman was preserved through these restructurings.

3

receipt to note the premium due, and to document the number of the check used to pay the premiums.

On September 17, 1999, Maureen submitted a renewal questionnaire to Laven and requested an increase of $15,000 in IRD's office contents coverage. Laven failed to communicate this request for increased insurance coverage to ProAssurance. Six months later, Laven sent IRD a notice that it had "overlooked a notation on [IRD's] renewal questionnaire" to add the requested coverage increase. (Appellant's App. p. 713).

In October of 2008, as was the typical practice in prior years, Laven forwarded a cover letter, renewal questionnaire, and a summary of IRD's current year coverage to Maureen. At that time, IRD's office contents coverage had a limit of $204,371. On October 8, 2008, Maureen returned the questionnaire, requesting an increase in office contents coverage to $350,000, an increase in professional liability coverage, and the addition of an additional insured in connection with lab machinery that IRD was leasing. On October 28, 2008, Laven sent IRD a cover letter, the coverage summary, and an invoice for the policy renewal, commencing on November 27, 2008. As with Laven's cover letters to IRD in past years, its cover letter included the cautionary language informing IRD to carefully review the proposed insurance coverage:

> ***Please take a moment to look these policies over and be sure that they have been issued to your liking***. I have enclosed a summary of all your policies. Please keep this with your copies of the policies. Any changes from your renewal questionnaire may not necessarily be included.

(Appellant's App. p. 293) (emphasis in original). The summary enclosed with the October 28, 2008 letter listed each of the coverages under the ProAssurance policy, including office contents coverage in the amount of $204,371.

In August 2009, IRD received the annual questionnaire, as well as the summary of insurance coverage for the preceding policy period that reflected office contents coverage of $204,371. Without notifying Laven of the error in insurance coverage, Maureen completed the questionnaire and requested another increase in office contents coverage in the amount of $45,000. Upon receipt of the questionnaire, Laven directed ProAssurance to increase IRD's office contents coverage, beginning with the new policy period on November 27, 2009.

Throughout the policy period, Laven sent a series of risk review newsletters to current and potential customers, including IRD, describing its insurance expertise and skills. One of the newsletters received by IRD in 2010 included the following representation:

Risk Analysis Services

A professional insurance agent is trained in risk analysis, which involves evaluating risk exposure to measure the potential loss to your business. With your specific business and property in mind, your agent can recommend appropriate insurance coverage and perhaps reveal risk exposures you may have overlooked. Insurance professionals are knowledgeable about the insurance options available in your state. With this expertise, your agent can suggest options from a vast menu of risk-management products and ensure that you are in compliance with all mandatory regulations. Your insurance professional can also amend a basic policy by adding endorsements, which alter or expand the coverage provided under a basic policy. The insurance program developed by your agent will be tailored to your business's unique needs.

(Appellant's App. p. 515).[2]

A fire destroyed IRD's Carmel office on October 26, 2009. The office's contents loss due to the fire amounted to $704,394.34. Because the office contents coverage insurance had a policy limit of $204,371, the fire resulted in an IRD shortfall of more than $500,000.

On October 22, 2010, IRD filed its Complaint against ProAssurance and Laven to recover the uninsured losses resulting from the fire. On April 16, 2012, each party filed a separate motion for summary judgment, along with a designation of evidence and a memorandum of law. On July 16, 2012, the trial court conducted a hearing on the motions. Thereafter, on July 31, 2012, the trial court granted summary judgment in favor of ProAssurance and against IRD, as well as denying Laven's and IRD's respective motions for summary judgment. In its judgment, the trial court concluded in pertinent part:

> The designated evidence shows that [Laven] was not under a special duty to advise [IRD] about its insurance coverage. The fact that Laven and IRD had a long-term relationship does not alone provide a sufficient basis for the imposition of a special duty. The determination of whether a special relationship exists is based on the breadth of the parties' relationships, and not merely length of time. The material facts reveal that the relationship between Laven and IRD was an arms-length relationship typical of that which exists between an insurance agency and an insured. More specifically, the facts show, *inter alia,* 1) that Laven's discretion to act on IRD's behalf in obtaining insurance renewals was limited to the coverages and amounts reflected on forms completed by IRD in the insurance renewal process; 2) Laven did not provide insurance counseling, and the type of insurance at issue, business personal property insurance, is a type of

---

[2] It should be noted that this flyer was mailed after the occurrence of the fire. Although the 2010 risk review newsletter was properly admitted, the admission of any additional newsletter is contested by the parties.

6

insurance common to nearly all small businesses; 3) Laven did not hold itself out as being an insurance agent with skills over and above other insurance agents; and 4) Laven's compensation was limited to the premiums paid on insurance, and it was never compensated for expert advice which it did not provide.

Likewise, there is no factual basis which could support a finding that Laven was under a contractual duty to provide insurance that would have fully covered the fire losses sustained by IRD in 2010. Indiana courts consider questions of an insurance agent's special duty through a tort analysis and not based upon contract law. Moreover, the essential terms of a contact for insurance are: 1) the subject of the insurance; 2) the risk or peril insured against; 3) the amount of coverage; 4) the limit and duration of the risk; and 5) the amount of the premium being paid. A contract of insurance is not binding if negotiations are incomplete in any material particular, or assent of either party is lacking. Here, there is no non-speculative basis by which the essential terms of the implied contract suggested by IRD could be supplied, and there is no evidence that Laven or ProAssurance assented to such an implied contract through their actions.

There is no basis to hold ProAssurance vicariously liable for the alleged acts or omissions of Laven. IRD maintains that Laven was a captive agent of ProAssurance. The undisputed material evidence shows that Laven was not a captive agent of ProAssurance. Insurance companies, such as ProAssurance, may be held vicariously liable for the actions of an insurance producer where the parties are engaged in an arms-length business relationship. The designated evidence also shows that Laven and ProAssurance structured their relationship as an independent contractor relationship, and that Laven maintained independent authority as to the manner of operating its insurance agency. There is no evidence that in its dealings with IRD, Laven did not give the appearance or make representations that it was acting under the control of ProAssurance.

(Appellant's App. pp. 13-15).

On August 27, 2012, IRD filed a motion to correct error. On November 14, 2012, after conducting a hearing, the trial court summarily denied IRD's motion. In the same motion, the trial court also denied IRD's request to consider newly discovered evidence. Both IRD and Laven requested certification of their respective motions for summary judgment for interlocutory appeal, which was denied by this court on February 1, 2013.

7

IRD now appeals the trial court's summary judgment in favor of ProAssurance. Additional facts will be provided as necessary.

I. *Standard of Review*

Because IRD's motion to correct error was based on the trial court's summary judgment, we review this appeal using the standard applicable to summary judgment rulings. *See Hair v. Schellenberger*, 966 N.E.2d 693, 699 n.3 (Ind. Ct. App. 2012), *trans. denied*. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . ., or if the undisputed facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one

8

element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

Although all parties filed a motion for summary judgment before the trial court, only the appeal to the trial court's grant of ProAssurance's motion is properly before us. In its motion, ProAssurance raised the following issues: (1) no issue of material fact exists to sufficiently establish a special relationship between IRD and Laven to create a heightened duty to advise as to coverage amounts; and (2) no issue of material fact exists to establish Laven's contractual duty to obtain coverage that would have fully covered IRD's fire losses. Therefore, ProAssurance concludes that, as IRD's claims against it are purely derivative of IRD's claims against Laven, ProAssurance cannot be held vicariously liable.

We note that, in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. While special findings are not required in summary judgment proceedings and are not binding on appeal, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id.*

II. *Special Relationship*

IRD first contends that the trial court erred when it concluded that no special and long-term relationship existed between IRD and Laven which would impose on the latter a duty to advise IRD about its insurance coverage.

9

We initially observe that an insurance agent who undertakes to procure insurance for another owes the principal a general duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. *Myers v. Yoder*, 921 N.E.2d 880, 885 (Ind. Ct. App. 2010). On the other hand, an insurance agent's duty does not extend to providing advice to the insured unless the insured can establish the existence of an intimate, long-term relationship with the agent or some other special circumstance. *Id*. In other words, something more than the standard insurer-insured relationship is required to create a special relationship obligating the agent to advise the insured about coverage. *Id*. In the absence of a special relationship, the agent does not have a duty to inform the insured about the adequacy of the coverage or any alternative coverage that is available. *Filip v. Block*, 879 N.E.2d 1076, 1085 (Ind. 2008), *reh'g denied*.

Factors demonstrating the existence of a special relationship between the agent and the insured include whether the agent: 1) exercised broad discretion in servicing the insured's needs; 2) counseled the insured concerning specialized insurance coverage; 3) held himself out as a highly-skilled insurance expert; or 4) received compensation for the expert advice provided above the customary premium paid. *Myers*, 921 N.E.2d at 885. In applying these factors, this court has previously cautioned that the mere establishment of a long-term relationship is not sufficient to create a genuine issue of material fact as to the requisite "agent plus" relationship. *Parker by Parker v. State Farm Mut. Auto.Ins. Co.*, 630 N.E.2d 567, 570 (Ind. Ct. App. 1994). Rather, the determination is based on the character of the parties' relationship, not merely its duration. *Id*. More than anything, a special relationship is defined by entrustment. *Id*. While the question of whether the

10

relationship gives rise to such a duty may involve questions of fact, whether an insurance agent owed the insured a duty to advise based on the undisputed facts is a question of law for the court. *Id.* The burden of establishing an intimate long-term relationship or other special circumstance is on the insured. *Id.*

Illustrative of these principles is *United Farm Bureau Mut. Ins. Co. v. Cook*, 463 N.E.2d 522 (Ind. Ct. App. 1984). In *Cook*, Melvin Cook, a surgeon, managed a horse farm as a sideline business for approximately twelve years prior to trial while Browning, an insurance agent, provided all the insurance coverage related to Cook's farm. *Id.* Cook would contact Browning to purchase all coverage pertinent to his farm but leave the details to Browning's discretion. *Id.* at 524. Browning would subsequently bill Cook for the coverage selected. *Id.* at 525.

At a certain point, Cook became aware of the opportunity to purchase two horse barns located in Kentucky and informed Browning of this potential purchase. *Id.* Cook purchased the barns and signed two sales contracts indicating that Cook would assume liability for the dismantling of the barns and their move to Indiana. *Id.* Thereafter, Cook discussed his insurance needs with Browning and placed an oral request for coverage. *Id.* Browning told Cook he could not write coverage for the component parts of the barns while they were in Kentucky. *Id.* According to Cook, this was the only denial of coverage that he received. *Id.* Browning did not deny he could provide the remaining coverage and he did not refer Cook to another agency. *Id.* During the dismantling of the barns, a crane overturned and Cook was held personally liable for the damages. *Id.* at 524. Cook attempted to file a claim with his insurance company but was denied

11

coverage. *Id*. He sued Farm Bureau and Browning to recover the amount he paid for the damages and costs. *Id*. The jury returned a money award in Cook's favor. *Id*. at 526.

In determining that the agent had a duty to advise Cook regarding appropriate coverage, we observed that

> Browning himself conceded that he was Cook's insurance man and that Cook relied on his advice in purchasing insurance. Additionally, by Browning's own admission, his role went beyond that of a mere agent and he counseled Cook on the appropriate coverages for his horse farm. . . . In the case at bar, a long-established relationship of entrustment had developed between the insured and agent, and Browning exercised broad discretion to service Cook's insurance needs.

*Id*. at 528.

Almost twenty-five years later, we affirmed these principles in *Billboards N' Motion, Inc., v. Saunders-Saunders & Assoc., Inc*., 879 N.E2d 1135 (Ind. Ct. App. 2008), *trans. denied*. In 1999, Billboards purchased an electronic billboard from a Korean Company. *Id.* at 1136. Saunders had been Billboards' insurance agent for fifteen years, and Billboards relied on Saunders for insurance advice. *Id*. Saunders indicated that he would insure the billboard but did not inquire after the year, manufacturer, model, description, or value of the electronic billboard. *Id*. At some point, Saunders came to see the containers for the electronic billboard. *Id*. When some of the billboard's parts were found missing, Billboards filed an insurance claim, which was denied. *Id*.

Evaluating whether Saunders had incurred a duty to obtain the additional information necessary for coverage, we noted that the depositions indicated that Billboards had relied on Saunders to determine appropriate coverages and had a fifteen-year business relationship. *Id*. at 1135, 1142-43. However, the evidence also reflected

12

that Saunders could only purchase insurance with Billboards' approval. *Id*. The court found the evidence contradictory enough on the issue of the existence of a heightened duty based on a long-standing relationship and other factors to deny summary judgment to both parties. *Id*. at 1143-44.

In light of *Cook* and *Billboards*, the designated evidence demonstrates that Laven incurred a duty to advise IRD. The relationship between IRD and Laven is characterized by a long-term, professional affiliation, and is defined by a yearly ritual and customized policies. With an initial policy issued through Hepler-Smith, Laven acquired IRD's policies in 1997 through its acquisition of Hepler-Smith, which resulted in a business relationship spanning thirty years. When IRD signed on with Hepler-Smith, a "professional liability coverage" endorsed by the IDA was recommended by Hepler-Smith and purchased by Dr. Lehman. (Appellant's App. p. 626). Throughout the time-span of this relationship, Laven was an "authorized agent" for the IDA-endorsed policies, issued through ProAssurance. (Appellant's App. p. 707). In fact, ProAssurance was the main insurance carrier of IDA-approved policies for Laven's customers at the time of the fire in 2009.

Although in *Cook*, Cook and Browning met in person to discuss insurance needs, the personal relationship between IRD and Laven was fostered through the yearly ritual of the renewal process and Laven's targeted advice, effectively becoming a mutually entrusted affiliation—similar to the one in *Cook*. When questions about IRD's insurance coverage arose, Maureen would contact Laven's office. At times, Laven would recommend changes to the policies. In one instance, when Maureen called Laven with "a

13

question about [IRD's] dental lab in the late 1990s, [Laven] advised [her] [] to change [IRD's] worker's compensation policy because law technicians had a higher risk of injury and a corresponding higher insurance rate." (Appellant's App. p. 632). IRD relied on Laven's advice.

On an annual basis, and as part of the insurance renewal process, Laven would mail IRD a questionnaire with an existing Declarations Page, outlining the current year's policy limits. The questionnaire sought to determine any changes in the dental practice and focused on recent "capital expenditures," including new employees on the worker's compensation policy, office equipment, and computer purchases. (Appellant's App. pp. 635-36). Specifically, the questionnaire was designed to aid the insurance agent "to keep abreast of any changes that may affect [the insured's] practice." (Appellant's App. p. 626). Maureen would complete the questionnaire and, based on her answers to the questions, request the changes in insurance deemed necessary. Laven would process the renewal and enact the requested changes, if any, and then send IRD an updated coverage summary for the forthcoming year's insurance policy, together with a cover letter.

ProAssurance and Laven now focus on the cover letter's content to bolster their argument that Laven had no discretion in servicing IRD's insurance needs. In its letter, sent together with the updated coverage summary, Laven cautioned IRD to

> ***Please take a moment to look these policies over and be sure that they have been issued to your liking***. I have enclosed a summary of all your policies. Please keep this with your copies of the policies. Any changes from your renewal questionnaire may not necessarily be included.

14

(Appellant's App. p. 293) (emphasis in original). However, at IRD's receipt of the cover letter, Laven had already counseled IRD about its policy's renewal by way of the questionnaire and guided IRD into either renewing its policy without changes or requesting an increase in policy limits. As such the cover letter's language cannot be interpreted to place on the insured the burden of ensuring that an insurance agent, who is in the business of procuring insurance, actually performed satisfactorily by acquiring the change in coverage.

In addition to the yearly renewal ritual, Laven would issue risk review newsletters[3] presenting itself as a highly-skilled insurance expert. In this newsletter, Laven advised its customers on how to minimize their risks and offered to evaluate its customer's risk exposure with the customer's specific business and property in mind, thereby tailoring the coverage to the customer's unique needs. Maureen testified that she would review this general information and act on it, if appropriate.

Mindful of the designated evidence, we conclude that there was a long-standing relationship between IRD and Laven that would justify imposing on Laven a duty to advise IRD. Although this relationship lacks the personal touch that Browning offered in *Cook*, the nature of IRD's relationship with Laven displays a similar professionalism,

---

[3] IRD devotes several pages of its appellate brief contesting the trial court's refusal to admit the additional risk review newsletters through its motion to correct error. Although IRD had designated the 2010 risk review newsletter in support of its motion for summary judgment, it provided additional newsletters to the trial court together with its motion to correct error. The trial court ruled that these additional newsletters "did not meet the requirements for consideration as newly discovered evidence" and refused to admit them. (Appellant's App. p. 16). Relying on Indiana Trial Rule 59(A)(1), IRD asserts that it used reasonable diligence to obtain the additional newsletters prior to the trial court's summary judgment. Upon review, we conclude that the trial court did not abuse its discretion by refusing to admit the additional newsletters as newly discovered evidence.

15

discretion, and reliance. While Laven—through Hepler-Smith—recommended an initial specialized policy, endorsed by the IDA, the insurance company made yearly recommendations by way of its questionnaire, purposely designed by the insurance agent to keep informed of its customers' needs. Even though IRD ultimately made the final decision on its actual procurement of the recommended policies, IRD's decision was in no small degree guided by its responses to Laven's tailored questionnaire. As such, IDA's endorsed insurance for dental professionals was further customized to Dr. Lehman's practice as a prosthodontist and was adjusted, on Laven's recommendation, to reflect the presence of fulltime laboratory technicians at the office. In addition, Laven held itself out as a highly-skilled insurance expert. Through its risk review newsletter, Laven made several representations about its abilities and offered its advice on insurance coverage with respect to its customers' business and property. As a result, a long-established relationship of entrustment developed between IRD and Laven. Therefore, in light of this thirty-year relationship, Laven had an obligation to advise IRD with respect to its insurance coverage. Consequently, we reverse the trial court's summary judgment in favor of ProAssurance with respect to the special duty to advise and enter summary judgment in favor of IRD.[4]

### III. *Duty to Procure*

---

[4] Because we find Laven's duty to advise premised on the existence of a special relationship, we will not address IRD's alternative contention whether Laven assumed a duty to advise based on special circumstances. *See, e.g., Meridian Title Corp. v. Gainer Group, LLC*, 946 N.E.2d 634, 638 (Ind. Ct. App. 2011), *trans. denied.*

16

Next, IRD contends that the trial court erred when it concluded that "there was no factual basis which could support a finding that Laven was under a contractual duty to provide insurance that would have fully covered the fire losses sustained by IRD[.]" (Appellant's App. p. 14). IRD maintains that "[i]t is well established in Indiana that an agent who breaches its duties to a customer may be sued for breach of contract." (Appellant's Br. p. 34).

An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. *Cook*, 463 N.E.2d at 527 (Ind. Ct. App. 1984). If the agent undertakes a duty to procure the insurance and, through fault and neglect, fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of a duty imposed by contract. *Id*. In Indiana, an oral or written contract of insurance requires a meeting of the minds of the parties upon the following essential elements of a contract: (1) the subject of the insurance; (2) the risk or peril insured against; (3) the amount of coverage; (4) the limit and duration of the risk; and (5) the amount of the premium to be paid. *Stockberger v. Meridian Mut. Ins. Co.*, 395 N.E.2d 1272, 1279 (Ind. Ct. App. 1979).

A contract to procure insurance can be implied based on past dealings between the parties even though the agent is given authority to ascertain some of the facts essential to the ultimate creation of the contract. *Bulla v. Donahue*, 366 N.E. 2d 233, 126 (Ind. Ct. App. 1977). The terms and conditions of the proposed policy need only be sufficiently definite to enable the agent or broker to procure a policy consistent with the applicant's

17

insurance needs. *Id.* However, there is a corresponding duty on the part of the insured to provide the agent or broker with the information necessary to implement the policy. *Id.* An agent or broker is not liable when the insured's loss is due to the insured's own act or omission. *Id.* Additionally, there is implied in an undertaking to procure insurance a duty to seasonably notify the applicant in the event the agent is unable to obtain insurance. *Bulla*, 366 N.E. at 126.

Referencing the traditional yearly renewal procedures and questionnaires, and the fact that there was an existing office contents insurance policy in place, IRD maintains that the parties have sufficiently established their past dealings to confirm a duty on Laven to procure insurance. Accordingly, the threshold question becomes the pattern of conduct between IRD and Laven.

As noted previously, the designated evidence reflects an established ritual spanning approximately three decades with the office contents policy at its core, which includes a set of delineated perils and has an annual duration. Each year, with the upcoming annual renewal date looming, Laven would send IRD a questionnaire and Declarations Page with the current year's policy limits. After completing the questions, which sought to determine any changes in IRD's dental practice, Maureen would return the questionnaire to Laven. Once Laven sent IRD an updated coverage summary for the forthcoming year's insurance policy, Maureen would pay the premium requested. However, in 2008, Laven failed to procure an insurance policy with an increase in IRD's office contents coverage as indicated on Maureen's completed questionnaire even though it did make the other two changes requested by IRD.

Thus, the terms and conditions of the proposed policy were in effect through the master office contents policy, which was renewed on a yearly basis without any invasive amendments. The only varying elements were the amount of coverage and amount of the premium. The amount of coverage was indicated on the questionnaire, as returned by Maureen, and was phrased sufficiently definite to provide Laven with the needed guidance to procure the increased coverage. With respect to the premium, it should be noted that, in *Cook*, we upheld a verdict for the customer in a breach of contract against the agent even though the agent never communicated a proposed premium to the customer. *See Cook*, 463 N.E.2d at 527-28. This is logical as the information on which the premium must be calculated can only come from the agent after he or she has procured the insurance. Thus, as Maureen had provided Laven with the necessary information to procure the policy, Laven had all the elements in its possession to also calculate the premium's amount.

Consequently, we conclude that an implied contract to procure insurance arose based on the past dealings between IRD and Laven. Laven had sufficiently definite directions from IRD in 2008 to enable it to consummate the insurance policy with an increased coverage limit; Laven's failure to do so triggered its liability. Therefore, we reverse the trial court's grant of summary judgment in favor of ProAssurance with respect to Laven's duty to procure and grant summary judgment to IRD.

## IV. *Vicarious Liability*

Turning its attention to ProAssurance, IRD next contends that it designated sufficient evidence establishing an issue of material fact that Laven is ProAssurance's

agent and ProAssurance consequently can be held liable for its agent's conduct and mistakes.

Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former. *Smith v. Brown*, 778 N.E.2d 490, 495 (Ind. Ct. App. 2002). Three elements must be shown in order to establish an actual agency relationship: (1) manifestation of consent by the principal; (2) acceptance of authority by the agent; and (3) control exerted by the principal over the agent. *Robertson v. Ticor Title Ins. Co. of Fla.*, 982 N.E.2d 9, 20 (Ind. Ct. App. 2012), *trans. denied*. Whether an agency relationship exists is generally a question of fact. *Id.* However, if the evidence is undisputed, summary judgment may be appropriate. *Demming v. Underwood*, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011), *trans. denied*.

The term "insurance agent" is often used loosely. But because the term invokes agency principles, we must identify the principal for whom the insurance intermediary is an agent. *Estate of Mintz v. Conn. Gen. Life Ins. Co.*, 905 N.E.2d 994, 1000 (Ind. 2009). "A party who negotiates an insurance contract to cover someone else's risk is acting as an agent for either the insured or the insurer." *Id.* at 1000-1001. Depending on whose interests the "insurance agent" is representing, he or she may be a "broker" or an "agent." *Id.* at 1001. A critical distinction exists. A representative of the insured is known as an "insurance broker." *Id.* As a general rule, a broker is the agent of the insured and not the insurer. *Id.* As such, the insurer is not liable for the broker's tortious conduct. *Id.* A broker represents the insured by acting as an intermediary between the insured and insurer, soliciting insurance from the public under no employment from any special

company and, upon securing an order, places it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker. *Id.*

In contrast, an "insurance agent" represents an insurer under an employment agreement by the insurance company. *Id.* Unlike the acts of a broker, "acts of an [insurance] agent are imputable to the insurer." *Id.* A person may be an agent as well as a broker, and may at different times act in different capacities, sometimes representing the insurance applicant and at other times acting on behalf of the insurance company. *Benante v. United Pac. Life Ins. Co.*, 659 N.E.2d 545, 547-48 (Ind. 1995). Whether an insurance intermediary is an agent of the insured or the insurer is fact sensitive and includes consideration of the facts and circumstances of the case, the relation of the parties, their actions, their usual course of dealing, any instructions given to the person by the company, the conduct of the parties generally, and the nature of the transaction. *Id.* at 548.

In interpreting Indiana's case law, the Seventh Circuit Court of Appeals stated "Indiana has a simple rule. An intermediary in the insurance business is the agent of the insured while shopping for a policy, and the agent of the insurer after a policy issues." *Fidelity & Cas. Co. of N.Y. v. Tillman Corp.*, 112 F.3d 302, 304 (7th Cir. 1997). "Indiana's rationale for treating intermediaries as agents of the insurers is that the insurers can decide with whom to deal. Carriers may demand that would-be agents establish their trustworthiness, and may set conditions—fidelity bonds, audits of the books, compensation for risk-bearing—to protect themselves. Insurers are best situated

to monitor intermediaries through which they choose to deal, and therefore bear the risk of loss." *Id.*

In *Estate of Mintz v. Connecticut General Life Insurance Co.*, 905 N.E.2d 994, 1002 (Ind. 2009), our supreme court concluded that based on the relationship between the insurer and agent and their actions and usual course of dealing, the agent was not an agent of the insurer. The court found it instructive that the agent was not 'just" the insurance company's agent but sold insurance policies for at least four companies; did not receive a commission from Connecticut General Life Insurance Co., although he did receive commissions from the other insurance companies he worked for; the agent was not authorized by the insurance company to issue policies on its behalf and had not entered into a written agreement with the insurance company; and the insurance company did not exercise control over his activities. *Id.* at 1001.

On the other hand, in *Benante v. United Pacific Life Insurance Co*, 659 N.E.2d 545, 547 (Ind. 1995), our supreme court concluded that there was a question of fact as to whether Kobielak was United Pacific's insurance agent. In *Benante*, Kobielak and the insurance company had entered into a "General Agent Agreement" and Kobielak represented himself as an agent of United Pacific. *Id.* Although the contract referred to Kobielak as an independent contractor, the supreme court considered this to be "significant but not dispositive." *Id.* Specifically, the court noted that, in the contract, Kobielak and United Pacific made certain undertakings to each other which could reasonably be determined to create an agency relationship: Kobielak signed Benante's annuity application and completed the areas of the application entitled "For Agent Use

22

Only"; Kobielak provided Benante with United Pacific brochures; and a representative of United Pacific testified Kobielak was its agent. *Id*.

Turning to the case at bar, the relationship between Laven and ProAssurance is governed by an Agency Agreement which defines its agent to be an independent contractor:

> VII. INDEPENDENT CONTRACTOR
>
> A.    Agent is an independent contractor. Nothing contained in this Agreement shall be construed as creating the relationship of employer and employee between the Company and the Agent or between the Company and any employee of Agent. The Company shall not be responsible for expenses incurred by Agent such as rent, transportation, clerical, solicitor's fees, postage, express, telephone, electronic, advertising, exchange, or for any other expenses whatsoever.

(Appellant's App. p. 808). However, the Agency Agreement also required "strict compliance with [ProAssurance's] rules and guidelines when selling and servicing [ProAssurance's] policies." (Appellant's App. p. 806). The Agreement imposed minimal annual production requirements and prohibited Laven from placing any referrals from ProAssurance with other insurance companies. In soliciting customers, Laven was only allowed to broadcast, publish or distribute advertising or promotional materials if these had been provided by ProAssurance. In the event a policy was issued, Laven could not charge a service fee to a policyholder with respect to the sale or servicing of ProAssurance's policies.

The designated evidence further supports that Laven admitted to being an "authorized agent" of an IDA-endorsed program through ProAssurance. (Appellant's

App. p. 707). While Laven stated that it was not an exclusive agent of ProAssurance, Laven nevertheless admitted that at the time of the fire in 2009, it was working with "one or two insurers" to provide coverage for "dental practices," of which ProAssurance was the main one. (Appellant's App. p. 450). Accordingly, Laven "placed the vast majority of [the] dental insurance with ProAssurance." (Appellant's App. p. 450).

Although the Agency Agreement characterizes Laven as an independent contractor, this element alone is not dispositive. *See Benante,* 659 N.E.2d at 547. As in *Benante*, Laven and ProAssurance made certain undertakings to each other which could reasonably be determined to create an agency relationship. *See id.* In particular, the terms and conditions of the Agency Agreement indicate a considerable amount of oversight and control by ProAssurance over Laven's conduct and actions. ProAssurance approved Laven to become an authorized agent of its IDA-endorsed policies, set a yearly minimum production goal, and paid Laven a commission from these sales. Because there is a genuine issue of material fact as to whether Laven acted as an agent for ProAssurance and therefore ProAssurance can be held liable for Laven's actions, we reverse the trial court's grant of summary judgment in favor of ProAssurance and remand to the trial court for further proceedings.

## CONCLUSION

Based on the foregoing, we hold that (1) Laven was under a special duty to advise IRD about its insurance coverage based on their long-term relationship; (2) Laven had a duty to procure full coverage insurance based on its past dealings with IRD; and (3) there is a genuine issue of material fact as to whether Laven is ProAssurance's agent and

24

therefore ProAssurance can be held vicariously liable for Laven's actions. Consequently, we reverse the trial court's summary judgment in favor of ProAssurance and grant summary judgment to IRD with respect to Laven's duty to advise and duty to procure. Additionally, we reverse the trial court's summary judgment with respect of ProAssurance's vicarious liability and remand to the trial court for further proceedings.

Reversed and remanded for further proceedings.

ROBB, C. J. and KIRSCH, J. concur