BILLBOARDS 'N' MOTION, INC.,
Appellant–Plaintiff,

v.

SAUNDERS–SAUNDERS
& ASSOCIATES, INC.,
Appellee–Defendant.

No. 49A02–0704–CV–300.

Court of Appeals of Indiana.

Jan. 30, 2008.

---

George M. Plews, Karen B. Scheidler, Plews Shadley Racher & Braun, Indianapolis, IN, Attorneys for Appellant.

Rori L. Goldman, Keith A. Kinney, Hill Fulwider McDowell, Funk & Matthews, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Billboards 'N' Motion, Inc. ("Billboards") appeals the trial court's grant of summary judgment to Saunders–Saunders & Associates, Inc. ("Saunders"). Billboards raises one issue, which we revise and restate as whether the trial court erred by granting Saunders's motion for summary judgment and by denying Billboards's motion for summary judgment. We affirm in part, reverse in part, and remand.

The relevant facts designated by the parties follow. Lawrence Johnson is the owner of Billboards, which sells advertising on billboard signs. In 1999, Billboards purchased an electronic billboard for $150,000 from a Korean company. Saunders had been Billboards's insurance agent for fifteen years, and Billboards relied on Saunders for insurance advice. Johnson told Claude Robinson, an agent and commercial lines vice president for Saunders, that he was going to purchase the electronic billboard. Robinson advised Johnson that he would need another inland marine policy and recommended that Johnson buy that policy. Johnson did not buy the policy or tell Saunders that he had purchased the electronic sign. Billboards had an insurance policy issued by Northern Insurance.

In November 1999, the electronic billboard was shipped to Chicago. Late in November 1999, Billboards decided to terminate the purchase because the electronic billboard was not weatherproof. After Saunders indicated that it would insure the electronic billboard, Billboards went through with the purchase of the electronic billboard. Saunders did not ask Billboards for the year, manufacturer, model, description, or value of the electronic billboard, and Billboards did not provide this information.

In September 2000, Billboards picked up the electronic billboard in Chicago and transported it to Indianapolis. At some point Robinson came to see the containers for the electronic billboard, and Johnson told Robinson what was in the containers. In April 2002, Billboards moved the electronic billboard from a warehouse to Gerling Associates for assembly. In May 2002, Fred Gerling informed Johnson that some of the parts were missing from the electronic billboard.

Billboards reported a claim for the missing parts to Saunders. Northern Insurance denied Billboards's claim. Billboards then filed a complaint against Northern Insurance and Saunders. Both Billboards and Northern Insurance filed motions for summary judgment. The trial court granted Billboards's motion for summary judgment against Northern Insurance and found that the missing parts were covered by Billboards's policy with Northern Insurance in the amount of $30,000.

Saunders filed a motion for summary judgment alleging that Saunders did not have a duty to procure insurance because Billboards did not provide the minimum

information that would enable Saunders to procure insurance for the electronic billboard. Billboards filed a cross motion for summary judgment and argued that Saunders breached its duty as an insurance agent in the following ways:

(1) after Billboards' initial advice, Saunders failed to obtain more coverage for the billboard despite knowing Billboards was obtaining a new asset with significant value; (2) Saunders failed to follow-up with Billboards to get whatever specific information about the billboard was necessary in order to get it properly insured; (3) Saunders failed to conduct or document proper evaluation at renewal to insure that coverage levels were appropriate and coverage was obtained; (4) Saunders failed to advise Billboards that it did not obtain the coverage requested; and (5) Saunders failed to document the request for coverage so that it would be addressed.

Appellant's Appendix at 172.

At the hearing, Billboards's expert witness, Eric Van Vleet, indicated that, based on the relationship between Billboards and Saunders, Saunders breached its duties to Billboards. After a hearing, the trial court granted Saunders's motion for summary judgment, denied Billboards's motion for summary judgment, and entered the following order:

\*   \*   \*   \*   \*   \*

### FINDINGS OF FACT

1. Billboards is in the business of mobile billboard advertising.
2. Saunders is an insurance agency and has been Billboards' insurance agency for over 10 years.
3. In October of 1999, Lawrence Johnson, Billboards' president, told Claude Robinson of Saunders that Billboards was planning to purchase a LED full color truck-mounted electronic billboard ("LED sign"). Mr. Robinson advised Mr. Johnson at that time that Billboards needed to add inland marine coverage to Billboards' existing policy to cover the electronic billboard. Mr. Johnson declined to purchase the coverage because he had not yet purchased the LED sign.

4. During their meeting in October of 1999, Mr. Robinson informed Mr. Johnson that Mr. Johnson would need to provide Mr. Robinson information about the LED sign before Mr. Robinson could obtain insurance. This information included the year, manufacturer, model, description, ID number, and total value of the LED sign. Mr. Johnson did not provide Mr. Robinson with information concerning the LED sign.

5. Mr. Johnson later informed Mr. Robinson that Billboards had decided not to purchase the LED sign. Mr. Johnson did not call Mr. Robinson to later inform Saunders that Billboards had in fact purchased the LED sign.

6. In their prior insurance dealings between Mr. Johnson and Mr. Robinson, they usually agreed on the details of a policy Mr. Robinson was to obtain for Billboards. Mr. Johnson and Mr. Robinson would know in advance know [sic] the amount of the premiums, the amount of the coverage, and what insurance company would be insuring the risk.

7. Mr. Johnson did not give Mr. Robinson authority to obtain insurance coverage for Billboards without Mr. Johnson's approval.

8. Mr. Johnson and Mr. Robinson did not agree on the subject of the insurance, the risk or peril to the insured against, the amount of the premium, the limit and duration of

the risk, and the amount of coverage for the LED sign.

9. Mr. Robinson of Billboards [1] did not request either orally or in writing that Saunders–Saunders and Associates procure insurance coverage for the LED sign.

10. After discovering that certain parts for the LED sign were missing, Billboards made a claim against its insurance carrier, Northern Insurance Company of New York. This Court previously determined that Billboards was entitled to recover $30,000 under Northern Insurance Company's policy, subject to Billboards' deductible.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the issues in this matter.

2. Saunders did not owe a duty to procure inland marine insurance coverage for Billboards, because a duty did not arise unless and until the agent had received definite instructions from the insured to enable the agent to consummate the final insurance contract.

3. Saunders did not breach a duty to Billboards.

4. Saunders is not liable to Billboards for the claim made in its complaint against Saunders.

5. Billboards is not entitled to recover damages from Saunders.

6. There are no genuine issues of material fact that remain for trial and judgment should be entered without delay.

WHEREFORE, the Court hereby grants defendant's motion for summary judgment, and denies plaintiff's cross-motion for summary judgment. The Court hereby enters judgment in favor of defendant, Saunders–Saunders & Associates, Inc., and against plaintiff, Billboards 'N' Motion.

*Id.* at 16–18.

The sole issue is whether the trial court erred by granting Saunders's motion for summary judgment and by denying Billboards's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

---

1. Billboards argues that the trial court made an error because Mr. Robinson is from Saunders, not Billboards.

The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* If there are no genuine issues of material fact, we will affirm a summary judgment on any legal theory supported by the record. *Anderson v. Horizon Homes, Inc.*, 644 N.E.2d 1281, 1289 (Ind.Ct.App.1995), *trans. denied.*

**A. *Saunders's Motion for Summary Judgment***

Billboards argues that the trial court erred by granting Saunders's motion for summary judgment. Specifically, Billboards argues that Saunders owed Billboards a duty to procure insurance for the electronic billboard. Saunders argues that there was never a meeting of the minds on the essential elements of a contract between Billboards and Saunders that would have required Saunders to obtain insurance coverage for the electronic billboard and that Saunders did not owe Billboards a duty to advise and obtain information from Billboards because there was no intimate long term relationship.

**1. *Meeting of the Minds***

We first address Saunders's argument that it did not have a duty to procure insurance because there was not a meeting of the minds on the essential elements of an insurance contract. Saunders relies on *Stockberger v. Meridian Mut. Ins. Co.*, 182 Ind.App. 566, 395 N.E.2d 1272 (1979). In *Stockberger*, this court held that "an oral or written contract of insurance requires a meeting of the minds of the parties upon the following essential elements of a contract: (1) the subject of the insurance; (2) the risk or peril insured against; (3) the amount of coverage; (4) the limit and duration of the risk; and (5) the amount of the premium to be paid." *Stockberger*, 182 Ind.App. at 577, 395 N.E.2d at 1279. However, the court also held that "[a] contract to procure insurance can be implied based on past dealings between the parties even though the agent is given authority to ascertain some of the facts essential to the ultimate creation of the contract." *Id.*

Saunders argues that Johnson conceded that he had no discussions with Robinson about the amount of the insurance or which company would be providing insurance coverage for the billboard. The following exchange occurred during Johnson's deposition:

Q.... [D]id you have any discussion with Claude Robinson, or anyone else from Saunders & Saunders?

A. That's when Claude—we went back and forth. That's when Claude said they would insure the system, in case, you know, the stipulation of whether it is weatherproof or not. That's when they say they would insure it.

Q. And how much did he say that type of insurance was going to cost?

A. He didn't say, sir. I left that up to him.

Q. So if he wanted to charge you $10,000 for that insurance, that would have been okay?

A. No, sir. He knew that the system is worth—he knew that the system was worth $325,000, and he knew that I paid $150,000 for it.

Q. But my question is, as far as the premium, how much were you going to pay Saunders & Saunders to have that type of insurance?

A. Sir, that was something that he needed to provide to us. Whatever it was, we had to take care of it.

Q. So if it was $10,000, the premium that you were going to have to pay for that insurance that was going to be okay?

A. That would have been peanuts of what we were going to make on it.

Appellant's Appendix at 94. Construing the reasonable inferences drawn from Billboards's designated evidence in favor of Billboards, we conclude that a question of fact exists as to whether a contract to procure insurance could be implied based on the past dealings between the parties.

### 2. *Whether Saunders Had the Duty to Obtain Information*

■ Saunders also argues that Billboards "never provided Saunders with information about the year, manufacturer, model, description, or identification number of the billboard." Appellee's Brief at 8. The designated evidence favorable to Billboards indicates that Saunders never asked Billboards for this information about the electronic billboard. Saunders argues that it is irrelevant whether Saunders asked Billboards for the information because Saunders had no obligation to request the information from Billboards. Saunders cites *Stockberger* for the proposition that Billboards had a duty to inform Saunders of the required information.

In *Stockberger,* Delbert Stockberger purchased a 1960 pickup truck and a 1952 pickup truck, both of which were inoperable. 182 Ind.App. at 568, 395 N.E.2d at 1274. Harvey Clary issued Stockberger an insurance policy with Meridian Mutual Insurance Company ("Meridian") to renew coverage on a 1963 pickup truck, effective from April 3, 1974, to October 10, 1974. *Id.* In May 1974, Stockberger told Clary at a coffee shop that the 1960 pickup was being repaired and would probably be ready for use in two weeks. *Id.* Stockberger and Clary both testified that the conversation occurred, but their recollections of the discussion varied. *Id.* Stockberger insisted that he requested Clary to transfer coverage from the 1963 truck to the 1960 truck. *Id.* He testified that Clary requested the serial numbers from the truck. *Id.* Stockberger recalled checking for the numbers and was sure that he provided them to Clary at a later date. *Id.* Stockberger did not provide further information even though he knew that Clary was going to need additional items of information to insure the vehicle. *Id.* at 576, 395 N.E.2d at 1278. Clary's version of the conversation was that he advised Stockberger that the truck should be insured but nothing further was discussed about insurance coverage. *Id.* at 568, 395 N.E.2d at 1274.

In August 1974, while Stockberger's wife was driving the 1960 truck, it was involved in a collision with another motor vehicle. *Id.* Stockberger notified Clary of the accident, but Clary could not find any cards indicating coverage on the 1960 truck. *Id.* Clary referred the matter to Meridian, and Meridian denied coverage. *Id.* at 568–569, 395 N.E.2d at 1274. Stockberger filed a complaint against Clary and argued that Clary was negligent. *Id.* at 568, 395 N.E.2d at 1274. At the close of Stockberger's presentation of evidence, the trial court granted Clary's motion for judgment on the evidence. *Id.*

On appeal, this court noted that Stockberger was thirty-six years old at the time of trial and had owned at least ten vehicles during his life. *Id.* at 575, 395 N.E.2d at 1278. Stockberger had procured insurance on vehicles in the past, including transferring coverage from one automobile to another. *Id.* Stockberger testified that every time in the past when he had purchased insurance he had received a policy or notice that the vehicle was insured within a reasonable time after requesting coverage, and that he expected to receive notice. *Id.* When he had transferred cov-

erage in the past, he had received notice of the transfer within thirty days. *Id.*

This court held that "[w]hile an implied contract to procure or renew insurance may arise in certain situations based on prior dealings between the parties, there is a corresponding duty on the part of the insured to provide the agent or broker with the information necessary to implement the policy." *Id.* at 577, 395 N.E.2d at 1279. The court held that the threshold question was the pattern of conduct between Stockberger and Clary. *Id.* The court noted that Stockberger was aware that he had not provided the agent with specific information to effectuate a transfer of coverage and that Stockberger had transferred coverage previously and knew what to expect from a transfer. *Id.* Although Stockberger expected to receive confirmation of the transfer, or notice of a premium adjustment, within a reasonable time, he did not inquire further when he did not receive notice. *Id.* at 577–578, 395 N.E.2d at 1279. We concluded that there was no meeting of the minds upon the subject matter of the insurance coverage, and Stockberger failed to establish a pattern of conduct from which a contract could be implied. *Id.* at 578, 395 N.E.2d 1272, 395 N.E.2d at 1279–1280.

Here, unlike in *Stockberger,* Billboards designated evidence that Robinson told Johnson that Saunders would insure the electronic billboard, and we have previously concluded that a question of fact exists as to whether a contract to procure insurance could be implied based on the past dealings between the parties. *See supra* Part A1. Further, the record indicates that Billboards did not know what information Saunders needed because there is no pattern of Billboards previously acquiring insurance for electronic billboards and Saunders never asked Billboards for the information about the electronic billboard.

Thus, we do not find *Stockberger* controlling.

We find *United Farm Bureau Mut. Ins. Co. v. Cook,* 463 N.E.2d 522 (Ind.Ct.App. 1984), instructive. In *Cook,* Melvin Cook, a surgeon, managed a horse farm as a sideline for approximately twelve years prior to trial and Christopher Browning, an insurance agent, provided all the insurance coverage related to Cook's farm. *Id.* Cook would ask Browning for all coverage pertinent to his farm and leave the details to Browning's discretion. *Id.* at 524–252. Browning would subsequently bill Cook for the coverage selected. *Id.* at 525.

Cook became aware of the opportunity to purchase two horse barns located in Kentucky and discussed the opportunity with Browning. *Id.* Cook purchased the barns and signed two sales contracts that indicated that Cook would assume liability for the dismantling project. *Id.* Cook went to Browning's office to discuss his insurance coverage and placed an order for coverage, apparently an oral request. *Id.* Browning told Cook he could not write coverage for the component parts of the barns while they were in Kentucky. *Id.* According to Cook, this was the only denial of coverage that he received, and Browning did not state what the extent of Cook's coverage would be. *Id.* He also did not deny he could provide the remaining coverage and he did not refer Cook to another agency. *Id.* During the dismantling of the barns, the crane overturned and Cook was held personally liable for the damages to the crane. *Id.* at 524. Cook attempted to file a claim with his insurance company but it denied coverage. *Id.* Cook sued Farm Bureau and Browning to recover the amount he paid for the damages to the crane and costs, and the jury awarded him $26,023.17. *Id.* at 526.

On appeal, the court addressed Browning's duty to exercise reasonable care. *Id.*

at 528. The court noted that the relationship between the Browning and Cook existed for over ten years, Browning conceded that he was Cook's insurance man and that Cook relied on his advice in purchasing insurance, and Browning counseled Cook on the appropriate coverages for his horse farm. *Id.* at 527. The court held, in part, that "Browning had an obligation, in light of his longstanding relation with Cook, ... to obtain the additional information necessary for coverage." *Id.* at 529.

■ Thus, we are faced with the question of whether Billboards had a longstanding relation sufficient to impose a duty on Saunders to obtain additional information necessary for coverage. Some of the factors relevant to a determination of whether a long term relationship or special circumstance exists include: (1) the broker's exercise of broad discretion in servicing the insured's needs; (2) the broker's counseling of the insured concerning specialized insurance coverage; (3) the broker's declaration that he is a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) the broker's receipt of compensation above the customary premium paid for expert advice provided. *Wyrick v. Hartfield,* 654 N.E.2d 913, 914 (Ind.Ct.App. 1995).

■ "The existence of a duty is a question of law for the court which depends, in part, on the relationship of the parties." *American Family Mut. Ins. Co. v. Dye,* 634 N.E.2d 844, 848 (Ind.Ct.App. 1994). "Whether an insurance agent owes the insured a duty to advise is likewise a question of law for the court." *Id.* However, whether the parties' relationship gives rise to such a duty may involve factual questions. *Id.* The burden is on the insured to show an intimate long term relationship between the parties or some other special circumstance. *Id.*

The following exchange occurred during Johnson's deposition:

Q. And who was your property and casualty insurer at that time?

A. Saunders & Saunders.

Q. Do you know which company they had procured property and casualty insurance with?

A. No. I just know Claude Robinson. Since I've had a long term relationship with them, I let them choose the company, etcetera for me.

\*   \*   \*   \*   \*   \*

Q. Tell me, how is it that you went about getting property and casualty insurance?

A. Through Saunders & Saunders.

Q. So how would that take place, would you call them up on the phone?

A. Yeah, we called them up. Yes.

Q. And would you call?

A. Claude Robinson.

Q. And what would you say?

A. We need insurance.

Q. Did you tell them what kind of insurance you would need for Billboards?

A. No. They would take care all [sic] of that for us. He would come by the office, and tell us what we needed.

Q. How would you determine the amounts, or the types of insurance that you would have?

A. That's the agent.

Q. So if, did you ever say to him, I want insurance on the building, or on signs, or what have you?

A. No, it wasn't my expertise.

Q. Whose expertise was it?

A. Claude Robinson, my agent.

Q. Well, was it a two-way conversation though, where you would discuss?

A. No. He was my agent. Since I have had a long term relationship with them. They knew exactly what we was having, etcetera.

Appellant's Appendix at 86–87.

Saunders points to the following exchange during Johnson's deposition:

Q. Did you ever tell anyone at Saunders that it was okay for them to get you insurance without first getting your permission?

A. Yes. I told them to get us insurance because of the coverage, yes.

Q. But you had to tell them first to get the insurance; is that correct?

A. Yes. We had told them, yes.

Q. And then they would follow your orders, would go get the insurance?

A. That's correct.

Q. And would they usually come back to you then with some information about what insurance was available?

A. Yes. No. No. Usually what he would do, he would come back and say this is the package we have for you. It was sent for you.

Q. And then you would have to approve that package?

A. Yes.

Q. Approve Saunders in getting you that coverage, allow them to go get the coverage for you?

A. That's correct.

Q. You would have to agree on how much you were willing to pay in premium, how much coverage you could obtain, what company it was going to be with, those kinds of things?

A. Yes.

    *     *     *     *     *     *

Q. . . . . [D]id you ever pay anything separate from a premium to Saunders?

A. No. As far as I know, no.

*Id.* at 107–108.

Based on the designated evidence, we conclude that whether the parties' relationship gives rise to a duty to obtain additional information involves factual questions. Thus, the trial court erred by granting summary judgment to Saunders. *See, e.g., Sizemore v. Templeton Oil Co., Inc.,* 724 N.E.2d 647, 651 (Ind.Ct.App.2000) (holding that summary judgment was inappropriate when the issue of whether the defendant breached a duty was a genuine issue of material fact).

**B.** *Billboards's Motion for Summary Judgment*

Billboards argues that the trial court erred by denying its motion for summary judgment. Billboards argues that "[b]ecause Mr. Robinson indisputably failed to fulfill his documentation and policy renewal inquiry duties, Billboards was entitled to summary judgment irrespective of whether the trial court believed Mr. Johnson or Mr. Robinson as to whether Mr. Johnson informed Mr. Robinson of the purchase." Appellant's Brief at 16. Billboards relies on Van Vleet's affidavit, in which Van Vleet stated that "Saunders [sic] failure to conduct or document a proper risk evaluation at the time of Billboards's renewal policy in early 2001 was a breach of its duty. Such an evaluation insures that coverage levels are appropriate for the client's business assets." Appellant's Appendix at 243. Van Vleet also stated that "[l]ooking at the nature of the relationship and the length of the relationship, Saunders had a duty to advise Billboards about the insurance exposures it faced and the insurance products available to cover those exposures." Appellant's Appendix at 243. Saunders argues that Billboards's arguments with regard to Saunders's alleged duty to document its file or conduct a risk

evaluation are premised on the assumption that Saunders had a duty to advise is based on a special relationship. Because we concluded that genuine issues of material fact exist regarding the parties' relationship, we conclude that the trial court did not err by denying Billboards's motion for summary judgment.[2] *See, e.g., Miles v. Christensen*, 724 N.E.2d 643, 647 (Ind. Ct.App.2000) (holding that the denial of summary judgment was appropriate when a genuine issue of material fact exists as to whether a breach of a duty occurred), *trans. denied.*

For the foregoing reasons, we reverse the trial court's grant of summary judgment to Saunders, affirm the trial court's denial of Billboards's motion for summary judgment, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

RILEY, J. and FRIEDLANDER, J. concur.

---

**2.** Billboards also argues that the trial court erred by failing to find that Billboards is entitled to certain damages. Because we affirm the trial court's denial of Billboards's motion for summary judgment, we need not address Billboards's arguments regarding damages.