


FILED

May 30 2025, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Aegean LLC d/b/a Public Agency Training Council,

*Appellant-Plaintiff*

v.

Taggart Insurance Center, Inc.,

*Appellee-Defendant*

---

May 30, 2025

Court of Appeals Case No.
24A-PL-2270

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49D01-2102-PL-3913

---

**Opinion by Judge Weissmann**
Judges May and Scheele concur.

**Weissmann, Judge.**

Aegean, LLC is in the business of training firefighters and police throughout the United States. After discovering that its insurance policies did not cover significant business losses from COVID-19-related cancellations, Aegean sued its insurance broker, Taggart Insurance Center (Taggart), alleging that Taggart negligently failed to advise Aegean about event cancellation insurance and to procure such coverage for Aegean. Taggart moved for summary judgment, alleging that Aegean's complaint, filed four years after Aegean first received its insurance policies, was untimely under the applicable two-year statute of limitations. The trial court agreed and granted summary judgment to Taggart.

Aegean appeals, claiming that the statute of limitations was effectively tolled by Taggart's representations and by an alleged special relationship between Aegean and Taggart. According to Aegean, the representations and special relationship imposed on Taggart a duty to advise Aegean about event cancellation insurance and excused Aegean's own failure to determine from reading the policies that it lacked such coverage. As no question of material fact exists as to the untimeliness of Aegean's complaint, we affirm.[1]

---

[1] The Court conducted oral argument in this appeal on April 22, 2025. We thank the parties for their able presentations.

## Facts

[3] Eight years ago, Aegean was conducting about 14 training seminars weekly, each with about 24 participants. These seminars represented most of Aegean's gross income. In April 2017, Aegean sought new insurance coverage and contacted Taggart, an insurance broker, for assistance. On May 9, 2017, Taggart emailed Aegean to say that it would "have you a quote for you[r] Insurance needs very soon." App. Vol. V., p. 15. While Taggart was working on quotes for Aegean, Aegean emailed Taggart to confirm: "You are working on a total package for [Aegean], including the Liability?" *Id.* at 14. The same day Taggart confirmed that it was "working on the total package." *Id.* at 13. A couple of days later, Taggart emailed Aegean insurance quotes that it said "will provide adequate coverage to [Aegean]." *Id.* at 16.

[4] Soon thereafter, Taggart procured several insurance policies that collectively provided general liability, umbrella, inland marine, and workers compensation coverage. Ohio Security Insurance Company (Ohio Security) was among the several insurers, and its policy provided Aegean with workers compensation and commercial property damage coverage. All of Aegean's new insurance policies were effective May 23, 2017, except for the workers compensation policy, which took effect June 1, 2017.

[5] During the several months that Taggart worked to procure these policies for Aegean, neither Taggart nor Aegean ever discussed event cancellation coverage. And the policies that Aegean obtained through Taggart did not provide such coverage.

On August 16, 2017, Taggart emailed Aegean the declarations pages for the policies. Over the next three years, Aegean renewed the policies without any discussion of, or request for, event cancellation coverage. In 2020, Aegean submitted a claim to Ohio Security for extensive losses that Aegean had suffered from COVID-19 pandemic-related cancellations. Ohio Security denied the claim, finding the loss was not covered by its policy.

In 2021—nearly four years after the policies first took effect—Aegean sued Taggart and Ohio Security. Aegean dismissed its claims against Ohio Security after this Court's decision in *Ind. Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403 (Ind. Ct. App. 2022).[2] As to Taggart, Aegean's complaint alleged that the insurance broker negligently failed to advise Aegean about event cancellation coverage and to procure that coverage for Aegean. Aegean also alleged that it had a special relationship with Taggart that gave rise to a duty for Taggart to advise Aegean about event cancellation insurance.

Taggart moved for summary judgment, claiming Aegean's complaint was untimely. Aegean responded by claiming that a genuine issue of material fact existed as to whether the onset of the two-year statute of limitations was effectively tolled by Taggart's representations to Aegean during the insurance brokerage process or as a result of a special relationship between Taggart and

---

[2] In *Ind. Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403, 410-11 (Ind. Ct. App. 2022), this Court upheld summary judgment to an insurer after finding that the "physical loss or physical damage" language in the insured's commercial property policy did not encompass the insured's claim for loss of use of its facilities during the COVID-19 pandemic.

Aegean's special relationship. The trial court granted summary judgment to Taggart, concluding Aegean had failed to meet its burden of establishing a genuine issue of material fact as to any statutory tolling and thus its complaint was untimely as a matter of law.

## Standard of Review

This Court reviews a trial court's summary judgment determination de novo, applying the same standard as the trial court. *Cox v. Mayerstein-Burnell Co., Inc.*, 19 N.E.3d 799, 803 (Ind. Ct. App. 2014) (quoting *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). Summary judgment is appropriate if the designated evidence establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C).

In conducting our review, "[a]ll evidence is liberally construed in a light most favorable to the non-moving party." *Heaton & Eadie Prof. Servs. Corp. v. Corneal Consultants of Ind.*, *P.C.*, 841 N.E.2d 1181, 1185 (Ind. Ct. App. 2006). But Aegean, as the party appealing the trial court's summary judgment determination, bears the burden of persuading this Court that the ruling was erroneous. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017).

## Discussion and Decision

Indiana imposes a two-year statute of limitations on tort claims. *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008); *see* Ind. Code § 34-11-2-4(a). "In general,

'the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" *Filip*, 879 N.E.2d at 1082 (quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)). With insurance-related tort claims, this date normally is either the initial date of coverage or when the insured can determine the scope of the coverage by reading the policy. *See id.* at 1083-84.

[12] Aegean's appellate claims all rest on the contention that the trial court erroneously determined that the statute of limitations began to run in 2017 when coverage started and when Aegean received the declaration pages of the policies from Taggart. It was at that point, according to the court, that Aegean knew of, or through the exercise of ordinary diligence, should have discovered Taggart's alleged negligence. Aegean disputes that determination, arguing that a genuine issue of material fact exists as to whether it could have reasonably discovered the lack of event cancellation insurance before Ohio Security denied Aegean's claim less than two years before Aegean filed its complaint.

[13] In support of its claim that the timeliness issue involves disputed questions of fact, Aegean makes two primary assertions: (1) the trial court improperly based its summary judgment ruling on an issue not raised in Taggart's motion for summary judgment; and (2) the court erred in finding no evidence that the statute of limitations was tolled.

# I. Issue Not Raised in Summary Judgment Motion

[14] Aegean claims that Taggart's motion for summary judgment did not address any special relationship between Taggart and Aegean and, thus, summary judgment on that issue was improper. We reject this claim, which misconstrues the parties' respective burdens under Indiana Trial Rule 56.

[15] The party who moves for summary judgment—here, Taggart—has the burden of making a prima facie showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016); T.R. 56(C). When, as here, "the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense." *Anonymous Physician v. Wininger*, 998 N.E.2d 749, 751 (Ind. Ct. App. 2013). The non-movant must "set forth specifically designated facts that establish a dispositive dispute of fact, or where there are undisputed material facts, conflicting inferences on an issue." *Heaton*, 841 N.E.2d at 1185.

[16] Taggart contended in its motion for summary judgment that Aegean's complaint was untimely as a matter of law because it was filed outside the two-year statute of limitations. And Taggart designated evidence in support of its contention. This was enough to meet Taggart's summary judgment burden,

thereby placing on Aegean the burden of refuting Taggart's statute of limitations defense. *See Wininger*, 998 N.E.2d at 751.

[17] Aegean attempted to counter Taggart's defense by alleging, among other things, the existence of an alleged special relationship between Aegean and Taggart that caused Aegean's delayed discovery of its lack of event cancellation insurance. In response, Taggart told the court at the summary judgment hearing that it viewed the existence of any special relationship as irrelevant to the statute of limitations question. The trial court found no special relationship between Taggart and Aegean.

[18] Aegean now claims that the trial court could not rest its summary judgment decision on any rejection of a special relationship because Taggart failed to allege or argue that no special relationship existed as a matter of law. But Aegean necessarily placed the special relationship issue before the court by raising it in response to an argument in Taggart's motion for summary judgment: that is, Taggart's statute of limitations defense. Therefore, the court did not improperly consider a claim not raised on summary judgment when it found that Aegean and Taggart had no special relationship.

[19] Aegean's argument on appeal essentially amounts to an assertion that Taggart had the initial burden of establishing no genuine issue of material fact as to any of Aegean's potential statute of limitations defenses. Aegean offers no authority supporting that proposition, and we find no such support in Trial Rule 56 or appellate opinions interpreting that rule. *See, e.g.*, *id.*; *Cox*, 19 N.E.3d at 808

("[I]n our review of the trial court's decision on summary judgment, we may consider any theory or basis supported by the designated materials" (internal quotation marks omitted)).[3] We therefore reject this claim and turn to Aegean's second argument: that the statute of limitations was tolled by Taggart's alleged representations or a special relationship between Aegean and Taggart.

## II. Special Relationship and Brokerage Representations

"All insurance agents who undertake to procure coverage owe their clients a general duty of reasonable care and skill in obtaining insurance and following their clients' instructions." *Ind. Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 264 (Ind. 2015). Included in this general duty is a duty of care to procure the insurance requested by the potential insured. *Id.* But "an agent's duty to procure is distinct from the duty to advise their clients about the adequacy of coverage or any alternative coverage." *Id.* "The agent does not have a [general] duty . . . to tell the potential insured about the adequacy of the coverage or any alternative coverage that is available." *Filip*, 879 N.E.2d at 1085.

---

[3] Aegean largely relies on *Reiswerg v. Statom*, 926 N.E.2d 26, 31-32 (Ind. 2010), which is distinguishable. *Reiswerg* focused on the procedural impact of failing to raise a statute of limitations defense in response to a motion for partial summary judgment. Our Supreme Court found in *Reiswerg* that the defendant did not waive its statute of limitations defense—alleged in its motion for summary judgment—by failing to raise that defense in its prior response to the plaintiff's earlier motion for partial summary judgment. *Id.* The issue that Aegean raises here is quite different: whether a summary judgment movant who raises the statute of limitations as an affirmative defense must also allege and show in its initial filings that no dispute exists as to all possible defenses to its own statute of limitations defense. *Reiswerg* does not decide this question.

[21] Yet there are at least two ways in which an agent's duty to advise may arise. First, "'a special relationship' of trust and intimacy" between the agent and the client may create such a duty. *Ind. Restorative Dentistry*, 27 N.E.3d at 264 (quoting *Filip*, 879 N.E.2d at 1085). Second, "an insurance agent may, in certain circumstances, assume a duty to advise regarding the adequacy of coverage." *Cox*, 19 N.E.3d at 808; *see also Filip*, 879 N.E.2d at 1086 (finding an issue of material fact as to whether the agent had assumed a duty based on the agent's representations that a business policy would cover nonbusiness personal property when it did not).

[22] Aegean alleges that both conditions existed—that Taggart and Aegean had a special relationship and that Taggart assumed a duty to advise through its statements to Aegean early in their business dealings. As a result, Aegean claims Taggart had a duty to advise Aegean about its lack of event cancellation insurance which overrode Aegean's own duty to read the policy to ascertain that it lacked such coverage. We find that Aegean failed to establish a genuine issue of material fact as to a duty to advise arising from either a special relationship or Taggart's representations.

## A. Special Relationship

[23] Although the existence of a duty is usually a question of law, when that duty hinges on the nature of an agent's relationship to the insured, it may turn on factual issues that the trier of fact must decide. *Ind. Restorative Dentistry*, 27 N.E.3d at 264-65. In determining whether a special relationship existed, the

first factor that reviewing courts consider is the length of the relationship between agent and client. "All special relationships are long-term, but not all long-term relationships are special." *Id.* at 265.

[24] Beyond mere duration, other factors supporting the existence of a special relationship are the agent's: (1) exercise of broad discretion to service the insured's needs; (2) counseling of the insured concerning specialized insurance coverage; (3) holding itself out as a highly-skilled insurance expert, coupled with the insured's reliance on the expertise; and (4) receipt of compensation above the customary premium paid for the expert advice provided. *Id.* (quoting *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844, 848 (Ind. Ct. App. 1994)). No factor in this non-exhaustive list is dispositive. *Id.*

[25] Evaluating these factors rarely results in a finding that a special relationship exists. As our Supreme Court noted in *Indiana Restorative Dentistry* in 2015, Indiana's appellate courts found a special relationship between agent and client as a matter of law only once in the 30 years preceding that opinion. 27 N.E.3d at 266 (referring to *United Farm Bureau Mut. Ins. Co. v. Cook*, 463 N.E.2d 522 (Ind. Ct. App. 1984)). And during that same period, only one Indiana appellate decision found a genuine issue of material fact as to the existence of such a special relationship. *Id.* (referring to *Billboards 'N' Motion v. Saunders-Saunders & Assocs., Inc.*, 879 N.E.2d 1135, 1143 (Ind. Ct. App. 2008)). Since then, the Indiana appellate courts have found no other special relationships between insurer and agent as a matter of law, although two decisions have found a material question of fact as to the existence of a special relationship between

agent and client. *Ind. Restorative Dentistry*, 27 N.E.3d at 267; *Filip*, 879 N.E.2d at 1086 (ultimately upholding summary judgment, however, because the statute of limitations had expired even if the assumption of duty and breach of that duty had occurred).

[26] In these few cases in which Indiana's appellate courts have found either an agent's duty to advise or a genuine issue of material fact as to the duty, the cases have involved circumstances not present here. For instance, in *Cook*, the client was a doctor who specifically retained an agent to find insurance coverage for transportation of a horse barn from Kentucky to Indiana. 463 N.E.2d at 525. Given the doctor's explicit reliance on the agent to procure coverage for the various perils inherent in such a move and the specialized nature of the insurance, this Court found the agent owed a duty to advise the client about and procure the necessary coverage. *Id.* at 528. And in the more recent *Indiana Restorative Dentistry*, our Supreme Court found a material question of fact as to the existence of a special relationship based on evidence that the agent and client had a long-term, interactive relationship and the agent marketed itself as an insurance expert who could advise clients on policies tailored to the clients' needs. 27 N.E.3d at 266-67. Such unique circumstances do not exist in this case.

[27] Finally, in *Filip*, 879 N.E.2d at 1086, our Supreme Court found a material question of fact as to whether the agent "assumed a special relationship" with its clients. The Court noted that when the policy was issued, the agent allegedly told the clients their personal property would be covered by the policy and also

promised to visit the premises (an act that could have revealed the policy gaps). *Id.*

[28]    The designated evidence upon which Aegean based its claim of a special relationship is far different from that found in *Cook*, *Indiana Restorative Dentistry*, and *Filip*. First, the Taggart-Aegean relationship was of limited duration. They worked together for only a few months before Taggart procured the policies for Aegean, and their business relationship lasted only a few years after that. *See, e.g.*, *Cosme v. Clark*, 232 N.E.3d 1141, 1155 (Ind. 2024) (finding insurance agent was entitled to directed verdict on duty to advise because the clients "introduced no evidence to show the relationship was long-term, that [the agent] had broad discretion, or that [the agent] had any special expertise or obtained specialized coverage"); *Cox*, 19 N.E.3d at 805 (finding an agent owed no special duty to advise a client because their relationship lasted about a month and the agent only provided options for general property and casualty policies and did not select the policy at issue).

[29]    Even if there existed a long-standing relationship between Aegean and Taggart, the record does not support any of the other common indicators of a special relationship. In arguing otherwise, Aegean claims the designated evidence showed Taggart:

- asked questions about and was aware of the nature of Aegean's business operations.

- was the exclusive insurance agent for Aegean.

- claimed skill in the insurance field through its 2024 website.

- had "broad discretion" in representing Aegean.

- argued with Aegean's potential carriers to obtain the correct coverage for Aegean (for instance, successfully contending that seminar instructors are independent contractors and did not need workers compensation coverage through Aegean).

- continued to advise Aegean on other insurance needs after the policies were procured in 2017.

[30] But there is no evidence that Aegean had given Taggart broad discretion or that Taggart received any additional compensation for working with Aegean. Nor was there evidence suggesting that Taggart's services to Aegean differed from those that Taggart provided to other business clients. *See, e.g.*, *DeHayes Grp. v. Pretzels, Inc.*, 786 NE.2d 779, 781-83 (Ind. Ct. App. 2003) (finding no special relationship creating a duty to advise when: (1) client's longtime insurance agent did not have "broad discretion" in determining the insured's policy purchases and merely obtained quotes for the client to select from; (2) did not hold itself out as a "highly-skilled insurance expert"; and (3) did not receive any special compensation as part of the solicitation of quotes). The evidence shows little more than Taggart's diligence in fulfilling its mission to obtain quotes for a new insurance package for Aegean and occasional dealings with Aegean and its business associates afterward.

[31] In any case, Indiana's appellate courts have been loath to find a duty to advise about alternative coverages even when the relationship between agent and client is longstanding. *See, e.g.*, *Parker by Parker v. State Farm Mut. Auto Ins. Co.*,

630 N.E.2d 567, 569-70 (Ind. Ct. App. 1994) (ruling that an insurance agent who had assisted client for 13 years but had little contact with client owed no specialized duty to advise client about the availability of underinsurance motorist coverage). In *Parker*, as in the present case, the client was in control of the ultimate decision regarding coverage and never requested or sought information about the omitted coverage of which it later complained. *Id.* at 570. And as here, the evidence in *Parker* failed to show that the agent agreed to conduct a periodic review of the client's policy insurer or that the agent received any additional compensation for procuring insurance for the client. *Id.*

[32] Given the dearth of evidence, we conclude that Aegean has failed to show any genuine issues of material fact concerning the alleged special relationship between Aegean and Taggart.

## B. Taggart's Alleged Representations

[33] Aegean's final claim is that it established a genuine issue of material fact as to whether Taggart essentially assumed a duty to advise Aegean about event cancellation insurance through its statements to Aegean early in their business dealings. As with Aegean's special relationship claim, Aegean asserts that Taggart's breach of that duty prevented Aegean from discovering, through reasonable diligence, its lack of event cancellation insurance and effectively tolled the statute of limitations until Ohio Security's denial.

[34] Underinsurance is deemed ascertainable by simply reviewing the policy. *See Filip*, 879 N.E.2d at 1084. Insurance applicants are not relieved from the duty of

exercising the same ordinary care and prudence required in every other business transaction. *Metro. Life Ins. Co. v. Alterovitz*, 14 N.E.2d 570, 574-75 (Ind. 1938). But "reasonable reliance upon an agent's representations can override an insured's duty to read the policy." *Filip*, 879 N.E.2d at 1084 (quoting *Vill. Furniture, Inc. v. Assoc. Ins. Managers, Inc.*, 541 N.E.2d 306, 308 (Ind. Ct. App. 1998)). This exception applies, for instance, if "an agent insists that a particular hazard will be covered," and the client relies on that representation. *Id.* Aegean's contention falls outside this exception.

[35] In arguing for an assumed duty to advise, Aegean focuses on three statements that Taggart made in emails to Aegean in May 2017 (before the policies took effect) and one statement that Taggart made in an email in August 2017 (after the policies were in place):

- Taggart stated it would have "a quote for you[r] Insurance needs very soon." App. Vol. V, p. 15 (May 9, 2017).

- In response to Aegean's question as to whether Taggart was "working on a total package for [Aegean], including the Liability," Taggart confirmed that it was "working on the total package." *Id.* at 13-14 (May 10, 2017).

- Taggart stated that it "was able to produce quotes that will provide adequate coverage" to Aegean, which Taggart then highlighted in the email. *Id.* at 16 (on or about May 12, 2017).

- When presenting the declarations pages of the five policies— "General Liability," "Umbrella," "Computer equipment," "Business Personal Property and loss of use," and "Workers Comp."—Taggart stated, "Per our conversation here is (sic)

the dec pages for *all coverage*." (emphasis added). *Id.* at 11 (August 16, 2017).

[36] Taggart's statements are too generic to excuse Aegean's failure to read its own policy and thereby discover its lack of event cancellation insurance. First, Taggart's statements do not appear to be representations that it would provide insurance that covered every peril Aegean might face. Instead, the statements largely appear to be just comments on the information that Taggart was collecting for or conveying to Aegean.

[37] For instance, the reference to "total package" seems to be just a practical confirmation that Taggart was working on quotes for the multiple policies that Aegean wanted. Similarly, Taggart's reference to "all coverage" appears to constitute an observation that Taggart was providing declaration pages for all of Aegean's insurance policies.

[38] But even if these statements could be construed as representations of coverage, they are inadequate to trigger a duty to advise. Even promises of "full coverage" are insufficient to fall within the exception to the rule that the client has the duty to read the policy. *Myers v. Yoder*, 921 N.E.2d 880, 889 (Ind. Ct. App. 2010). At best, the "total package" language, which has never been addressed in the context of an agent's purported duty to advise, appears to be the functional equivalent of "full coverage" found inadequate to create a duty to advise in *Myers*. The same is true of the "adequate coverage" comment.

The promises of "a quote" for Aegean's "Insurance needs" and "adequate coverage" appear to be even less consequential than a representation of "full coverage." Accordingly, this language also is inadequate to trigger a duty to advise under *Myers*. Thus, none of Taggart's representations included in Aegean's designated evidence are sufficient to raise a question of material fact as to whether Taggart had a duty to advise Aegean on event cancellation insurance that ultimately would toll the statute of limitations here.

## Conclusion

We conclude that summary judgment was proper because no material question of fact exists as to whether the two-year statute of limitations began to run in 2017 and expired before the filing of Aegean's complaint four years later. As Aegean's complaint was untimely, we affirm the trial court's entry of summary judgment for Taggart.

May, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

George M. Plews
Joanne R. Sommers
Mia K. Tapella
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Alex M. Beeman
Reminger Co. LPA
Evansville, Indiana